UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STACY A. STAGGS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:09-cv-1519-WTL-TAB |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| the Social Security Administration ) | |
| ) | |
| Defendant. ) | |
| ) | |

## ENTRY ON JUDICIAL REVIEW

Pursuant to 42 U.S.C. § 405(g), Plaintiff Stacy Staggs seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits and Supplemental Insurance Benefits under Titles II and XVI of the Social Security Act. The Court rules as follows.

## I. PROCEDURAL HISTORY

Staggs filed her application on October 30, 2006, alleging disability beginning on May 15, 2002. Her application was denied initially on December 12, 2006. Upon reconsideration, Staggs' application was again denied on March 27, 2007. Staggs timely requested a hearing before an Administrative Law Judge ("ALJ"). That hearing, at which Staggs was represented by counsel and testified, was held via videoconferencing before ALJ Arthur S. Cahn on February 5, 2009. In his May 12, 2009, decision, the ALJ denied Staggs' application for benefits. After the Appeals Council denied review of the ALJ's decision on November 6, 2009, Staggs filed this timely appeal.

## II. STAGGS' MEDICAL HISTORY

Staggs was 28 years old when she filed her application for benefits. She has an eighth grade education and was in learning disabled classes the entire time she was in school. Staggs' relevant work experience is as an unskilled worker. She previously worked as a cashier, clerical assistant, housekeeper, and receptionist. Starting in June 2008, Staggs worked between 28 and 31 hours per week at a children's used clothing store.

Given the nature of Staggs' arguments and the Court's resolution of them, only a general discussion of the medical evidence in the Record is necessary. Staggs was diagnosed with scoliosis at age 12 and has had back problems since then. Although chiropractic treatment initially helped, her symptoms have progressively worsened. Staggs now has degenerative disc disease at the L4-5 and L5-S1 vertebrae. She also has lumbar facet syndrome, bilateral sacrolitis, and low back pain. A May 2002 MRI also revealed central canal stenosis and mild neural foraminal narrowing. Staggs' back problems have resulted in bilateral leg and foot pain, as well as numbness. The symptoms in her legs have caused her to fall on occasion. Staggs' medical conditions have also resulted in depression and anxiety. In addition to her back problems, Staggs is also obese. Additional evidence of record is discussed as relevant below.

## III. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous

work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be

affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Id.*

## IV.  DISCUSSION

The ALJ found at step one that Staggs had not engaged in substantial employment since her alleged onset date of May 15, 2002.  At step two the ALJ concluded that Staggs had the severe impairments of degenerative disc disease of the lumbar spine L4-L5 and L5-S1, lumbar facet syndrome, bilateral sacrolitis, low back pain, obesity, and non-severe depression.  Record at 11.  However, at step three, the ALJ concluded that these impairments, singly or in combination, did not meet or medically equal a listed impairment.   After step three but before step four, the ALJ determined that Staggs had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with some modifications.  That is, the ALJ concluded that Staggs can "lift and carry 20 pounds occasionally and 10 pounds frequently."  Record at 15.  She can "stand, walk and sit about 6-hours in an 8-hour workday with unlimited pushing and pulling."  *Id.*  However, Staggs has "environmental limitations and must avoid concentrated exposure to extreme heat, extreme cold, vibration and hazards including machinery and unprotected heights."  *Id*.

Based on the RFC, at step four, the ALJ found that Staggs was unable to perform her past relevant work.  However, at step five, the ALJ concluded that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform."  *Id*. at 17.

4

Therefore, the ALJ determined that Staggs was not disabled.

Staggs advances several objections to the ALJ's report, each of which are addressed below.

> A. **Failure to summon a medical expert.**

Staggs' first argument is that the ALJ's step three decision must be reversed because the ALJ failed to summon a "medical advisor (neurologist, psychologist)" to testify. Docket No. 17 at 14. According to Staggs, because there was no expert medical testimony at the hearing, the ALJ could not possibly have "an informed basis" for his step three decision. *Id*. Staggs cites *Barnett v. Barnhart*, 381 F.3d 664 (7th Cir. 2004), in support of her position. *Barnett* states:

> Moreover, as is evident from the perfunctory discussion of the listing, the ALJ never consulted a medical expert regarding whether the listing was equaled. Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue . . . . Here, the ALJ did not consult an expert regarding medical equivalence . . . . Nor can we locate a . . . form that would otherwise staisfy the ALJ's duty to consider an expert's opinion on medical equivalence . . . . [R]ather than soliciting a neurologist's opinion on the matter, the ALJ simply assumed the absence of equivalency without any relevant discussion. That assumption cannot substitute for evidence and does not support the decision to deny benefits.

*Id*. at 670 (citations omitted).

The Commissioner asserts that expert medical testimony is not necessarily required because "[t]he determination as to whether the record is complete or how much evidence to gather is left to the discretion of an ALJ." Docket No. 23 at 9. According to the Commissioner, the Record in this case contained sufficient medical evidence to support the ALJ's conclusion. Moreover, the Commissioner notes that if expert medical testimony is required, then it was supplied by the two state-agency physicians who examined the Record and concluded that there was no medical equivalence. *Id*. at 10.

5

The two state-agency physicians submitted their opinions in December 2006 (Dr. Dobson) and March 2007 (Dr. Corcoran). Record at 427-34; *id.* at 439. Staggs claims that these opinions are insufficient because neither doctor was able to rely on her later-acquired evaluation from St. Francis Hospital,[1] which she claims proves that she meets or medically equals Listing 1.04A.

Listing 1.04A requires "[e]vidence of nerve root compression characterized by neuro-anotomic distribution of pain, limitation of motion of the spine, motor loss . . . accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. pt. 404, subpt. P, App. 1. Having reviewed the October 31 medical record, the Court believes that this opinion provides significant substantive evidence regarding Staggs' condition and any medical opinion rendered on the subject of equivalence without taking this record into consideration is incomplete and ineffective. The Court's conclusion is further bolstered by the fact that the Court is unable to determine what medical records Drs. Dobson and Corcoran relied upon in rendering their opinions. Therefore, while the Commissioner is correct that a reviewing state-agency medical expert can supply the required expert opinion on medical and functional equivalence, his argument that such an opinion on the Record evidence was rendered in this case is unconvincing. Accordingly, this case must be remanded to the Commissioner with instruction to obtain and consider an updated medical opinion regarding whether, based on all of the evidence in the Record, Staggs' severe impairments, singly or in combination, medically or functionally equal any of the Listings of Impairments.

---

[1] The report from St. Francis Hospital was generated on October 31, 2008.

**B.     Listing 1.04A.**

Staggs also argues that the "ALJ's decision must be vacated and remanded because it is contrary to the medical evidence, and is plainly erroneous." Docket No. 17 at 16. Staggs alleges that "[t]he ALJ ignored, only selectively considered, or mischaracterized all of the evidence proving that [her] spine disorder met or medically equaled the requirements for [Listing 1.04A]." *Id*. at 17. Specifically, Staggs claims that the ALJ ignored or mischaracterized the:

- May 2, 2002 lumbar spine MRI (Record at 448) "by purporting to review it fully, but omitting . . . the findings that she had a disc bulge at L4-5 with central canal stenosis and bilateral neural forminal narrowing." Docket No. 17 at 17. Staggs also asserts that the ALJ omitted the finding that she had identical symptoms at the L5-S1 level. *See id.* at 17-18.

- November 30, 2004 lumbar spine MRI (Record at 449), which reported L2-L3 and L3-L4 ligamentum flavum hypertrophy, herniated discs at L4-L5 and L5-S1, and flattening of the thecal sac. *See* Docket No. 17 at 18.

- December 21, 2005 pain evaluation (Record at 450-52) performed by Dr. Kowlowitz "by omitting the findings that she had all 18 tender points, diagnostic for fibromyalgia," a "limited range of spinal motion," and "weakened muscle strength and hypoesthesia." Docket No. 17 at 18.

- March 15, 2006 hospital physical therapy evaluation (Record at 248), which reports a diagnosis of "chronic low back pain due to degenerative disc disease." Docket No. 17 at 19. Staggs also emphasizes that this record documents "functional deficits in performing personal care and in changing positions due to

7

severe pain," "decreased trunk range of motion for flexion, extension and rotation," "lumbosacral muscle spasms," and "weakness in hip extension, flexion and abduction." *Id.*

- March 28, 2006 hospital physical therapy evaluation (Record at 211) that reported Staggs' "chronic low back pain due to degenerative disc disease was aggravated by her pregnancy." Docket No. 17 at 19.

- October 9, 2006 pain evaluation (Record at 408-10), which the ALJ refused to consider as proving Listing 1.04A. *See* Docket No. 17 at 19.

- November 8, 2006 lumbar spine MRI (Record at 412) reporting that Staggs "had herniated discs at the L4-5 and L5-S1 levels." Docket No. 17 at 20.

- October 31, 2008 St. Francis hospital physical therapy evaluation (Record at 455-56) that characterized her back pain as "chronic" and noted that "her flexion, extension and rotation were limited by pain . . that . . . went down her right leg." Docket No. 17 at 20. The report also notes that Staggs' "side bending was limited by pain," "[s]he had spasms in her hamstrings," "weakness in her legs and in her abdomen," a "positive straight leg raise test," and "a leg length discrepancy." *Id.*

According to Staggs, "[t]he incomplete, misleading, unreliable review of the evidence and [the ALJ's] illogical reasoning require reversal of the denial decision." *Id.* In response, the Commissioner argues that the ALJ did not "ignore[] medical findings that demonstrate that Plaintiff met the requirements for Listing 1.04" because "no medical source in the record analyzed the evidence and arrived at the conclusion that Plaintiff does [meet this Listing]." Docket No. 23 at 10-11.

Although the Court agrees that some of the medical records that Staggs cites do nothing to bolster her position, she has also pointed out several records that the ALJ either did not fully discuss or omitted entirely from his decision. A review of these records suggest that Staggs may in fact meet or medically equal Listing 1.04A. Therefore, this cause is remanded to the Commissioner with instructions to consider whether, based on all of the evidence in the Record, Staggs satisfies the requirements of Listing 1.04A.

### C. Credibility determination.

Staggs next alleges that the ALJ committed error when he found her testimony not credible. In his decision the ALJ stated:

> I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. The claimant's allegations of pain and resulting limitations are less than credible and are not supported by the substantial evidence of record .
> . . . [The claimant] testified that she lives with her boyfriend, and is the mother of 3 children, ages 11, 5, and 2, however she is less than credible concerning daily activities, she does no chores, just watches TV, while her boyfriend does all of [t]he chores; cooks and cleans for her. In addition, she has been working part-time 28 to 30 hours a week, since June 2008, in a kids clothing stores, and prior to that she worked more hours. I find the claimant's testimony is not credible.

Record at 16.

Because the ALJ evaluates credibility by questioning and observing a live witness, not simply a cold record, the ALJ's credibility determination is reviewed deferentially and should be overturned only if it is "patently wrong." *See Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). However, "[t]he determination of credibility must contain specific reasons for the credibility finding" and "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Id.* (citing *Arnold v. Barnhart*, 473

9

F.3d 816, 822 (7th Cir. 2007)).

> The reasons for an ALJ's credibility determination must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

*Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003) (quoting SSR 96-7p, 1996 WL 374186 (July 2, 1996)). Given this standard, it is clear that the ALJ in this case failed properly to articulate his reasons for finding Staggs less than fully credible.

Although the ALJ identifies Social Security Rule 96-7p, he does not address any of its seven factors: (1) the individual's activities of daily living; (2) the location, frequency, duration, and intensity of the symptom; (3) factors that precipitate or aggravate the individual's symptom; (4) the type, dosage, effectiveness, and side effects of medication taken for the symptom; (5) treatment, other than medication, used to alleviate the symptom; (6) any other measures the individual has used to relieve the symptom; and (7) other factors concerning the individual's functional limitations and restrictions due to the symptom. Nor does the ALJ explain why, other than because Staggs claims her boyfriend does all of the housework while she works between 28 and 30 hours at a used clothing store, he finds her testimony not credible. The ALJ's conclusory statements are insufficient to support a credibility determination. *Brindisi*, 315 F.3d at 787. Accordingly, the ALJ's failure to explain why Staggs' testimony is not credible requires remand.

### D. **Failure to summon a vocational expert.**

Staggs' final argument is that the ALJ erred when he relied solely on the Medical Vocational Guidelines (the "Grid"), 20 C.F.R. pt. 404, subpt. P, App. 2, to determine that she

could perform some jobs and was thus not disabled. Staggs claims that "she had significant non-exertional impairments such as pain and depression which were not factored into the Grid's rules," yet "no vocational expert testified at the ALJ hearing." Docket No. 17 at 25. In short, Staggs argues that the ALJ should have summoned a vocational expert to testify, instead of relying solely on the Grid to conclude that she was capable of performing light work with some restrictions.

The Commissioner concedes that "[i]f 'nonexertional limitations might substantially reduce a range of work an individual can perform, the use of [Medical-Vocational Rules] would be inappropriate and the ALJ must consult a vocational expert.'" Docket No. 23 at 16 (quoting *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001)). SSR 83-14 further explains that there are a range of nonexertional impairments, some of which

> have very little or no effect on the unskilled occupation base. Examples are inability to ascend or descend scaffolding, poles, and ropes; inability to crawl on hands and knees; and inability to use the finger tips to sense the temperature or texture of an object. Enviornmental restrictions, such as the need to avoid exposure to feathers, would also not significantly affect the potential unskilled light occupation base.

However, in other situations, for example

> [w]here a person has a visual impairment which is not of Listing severity but causes the person to be a hazard to self and others . . . the manifestations of tripping over boxes while walking, inability to detect approaching persons or objects, difficulty in walking up and down stairs, etc., will indicate to the decisionmaker that the remaining occupation base is significantly diminished for light work.

SSR 83-14, 1983 WL 31254 (1983). Finally, "[w]here nonexertional limitations or restrictions within the light work category are between the examples above, a decisionmaker will often require the assistance of a [vocational specialist]." *Id*.

Here, the ALJ concluded that Staggs could perform light work with some limitations and that her "additional limitations have little or no effect on the occupational base of unskilled light work." Record at 17. The ALJ continued and noted: "A finding of 'not disabled' is therefore appropriate." *Id*. However, although the ALJ implicitly acknowledges the necessity of discussing Staggs' depression, the entry states only: "[E]xplain how additional limitations (depression) have only slight effect on occupation base cite appropriate SSR . . . ." *Id*. Absent any discussion of how or why Staggs' nonexertional limitations, including her depression, impact her ability to perform light work, the Court cannot uphold the Commissioner's ruling on this point. Moreover, the Court is of the opinion that Staggs' limitations fall somewhere between the examples discussed in SSR 83-14 and thus her case would seem to require the testimony of a vocational expert. Accordingly, on remand the Commissioner shall summon a vocational expert to discuss if and how Staggs' nonexertional limitations affect her ability to perform light work.

## CONCLUSION

For the reasons discussed at length above, this case is **REVERSED AND REMANDED** with instructions to: (1) obtain and consider an updated medical opinion regarding whether, based on all of the evidence in the Record, Staggs meets or medically equals any of the Listings of Impairments; (2) consider all of the evidence of Record to determine whether Staggs meets or medically equals any of the Listings of Impairments; and (3) consult with a vocational expert to determine if and how Staggs' nonexertional limitations affect her ability to perform light work.

SO ORDERED: 02/10/2011

*[signature: William T. Lawrence]*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Thomas E. Kieper
United States Attorney's Office
tom.kieper@usdoj.gov

Patrick Harold Mulvany
patrick@mulvanylaw.com